## HOLLOWAY *v.* LANCY.[1]

### (*District Court, D. Massachusetts.* June 16, 1886.)

DEMURRAGE—FAILURE TO OBEY INSTRUCTIONS OF CONSIGNEE—DELAY ARISING THEREFROM.

> Libelant's schooner was ordered by the respondent, to whom it was consigned, to proceed to a certain wharf in a certain manner. The libelant endeavored to reach the wharf in another manner, and while so engaged the schooner grounded. In consequence of this a delay of eight and one-quarter days ensued. *Held* that, as the wharf designed was suitable, and the manner reasonable, and as the accident happened solely from the libelant's fault in not obeying the instructions given him, the libel must be dismissed.

In Admiralty.

*Charles F. Walcott,* for libelant.

*Joseph M. Day,* for respondent.

NELSON, J. This is a libel, by the master of the schooner L. S. Melson, against the consignee of a cargo of 312 tons of coal, brought from Philadelphia to Provincetown, for demurrage and expenses incurred in discharging a part of the cargo in lighters. In attempting to approach the consignee's coal wharf, in Provincetown, at which the master was directed to deliver the coal, the schooner grounded, and by this cause was detained eight and one-quarter days beyond the lay days stipulated in the bill of lading, and was obliged to discharge a part of the cargo by lighters before she could be got afloat. The disputed points were as to the depth of the water, and whether the master followed the directions of the consignee in approaching the wharf.

It was clearly proved that in front of the wharf, which extended out from the shore in a southerly direction, and on the easterly side, where vessels lay when discharging coal, the water was at least 10 feet deep at ordinary high tide. It was certainly of that depth when the schooner first attempted to enter. This depth of water was sufficient for a vessel of her draught, which was nine feet and four inches. But further out from the end of the wharf, on the east side, there was a shoal where the water was of less depth, and it was on this shoal that the schooner grounded. The libelant had never been in Provincetown before, and was unacquainted with the harbor. He states in his deposition that, in trying to get the schooner in, he followed the directions of the consignee, and he denies that the consignee informed him of the existence of the shoal. Perhaps the libelant is under some disadvantage from the circumstance that his testimony appears only by deposition, while the witnesses of the other side were examined orally in court. But, making every allowance on that score, I find myself unable to disbelieve the Provincetown witnesses, from whose testimony it is clearly proved that the libelant was directed by the consignee to bring the schooner in under sail, and was told about the shoal, and cautioned to beware of it. If he

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

had obeyed these directions, the schooner would undoubtedly have come in safely, as other vessels of greater draught have done before and since. But instead of doing as he was directed, he took in and furled his sails, got his anchor, and then proceeded to warp the schooner in by lines of great length leading to another vessel lying at the end of the wharf. The result was that the schooner, being held only by the warps, was driven by the south-west wind off to the eastward of the shoal, and, in hauling on the warps from that direction, she was drawn directly upon it. The accident appears to have happened solely from the libelant's fault. As he was unacquainted with the ground, it was especially incumbent on him to observe the advice and directions of the consignee, who did know it, and was also responsible for the sufficiency of the water at the wharf. He can have no possible claim on the consignee for a detention occasioned by his own negligence.

Libel dismissed, with costs.